**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OMAR GRAYSON, #R48244,  )  <br> ) <br> Plaintiff,  ) <br> ) <br> vs.  ) <br> ) <br> JODY GOETTING  ) <br> and S. A. GODINEZ,  ) <br> ) <br> Defendants.  ) | Case No. 13-cv-01251-MJR |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

      Plaintiff, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to 28 U.S.C. § 1983 against Defendant Goetting (Pinckneyville's assistant warden) and Defendant Godinez (Illinois Department of Corrections ("IDOC") director) (Doc. 1). Plaintiff challenges an IDOC policy requiring him to shear his dreadlocks. Plaintiff's religious beliefs prohibit him from cutting his hair, which naturally forms dreadlocks as it grows. According to the complaint, the policy, as applied to him, violates the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. Plaintiff also asserts a retaliation claim. He seeks punitive damages, a change in IDOC policy, and a sentence reduction (Doc. 1, p. 10). He also seeks injunctive relief in the form of a prison transfer (Doc. 6).

      This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is

1

required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After carefully reviewing the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; thus, portions of this action are subject to summary dismissal.

**The Complaint**

According to the complaint, Plaintiff is a practitioner of the African Hebrew-Israelite religion (Doc. 1, p. 5; Doc. 1-1, p. 3). One of the tenets of his faith requires Plaintiff to refrain from cutting his hair. As it grows, Plaintiff's hair forms dreadlocks.

Plaintiff transferred from Stateville Correctional Center ("Stateville") to Pinckneyville on September 6, 2013.[1] In consideration of Plaintiff's religious beliefs, Stateville's warden granted Plaintiff permission to transfer without shearing his dreadlocks. His hair was first searched for contraband. Following the transfer, Plaintiff was taken for photo identification on September 9, 2013. He received an order to cut his dreadlocks for the photograph. Plaintiff refused for religious reasons.

After returning to his cell, Plaintiff filed an emergency grievance. In it, he explained that his religious beliefs prohibited him from cutting his hair, and forcing him to do so would be unconstitutional. He also explained that the United States Court of Appeals for the Seventh Circuit had already addressed this issue in a lawsuit he filed. *See Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012). Plaintiff received no response to the emergency grievance.

On September 18, 2013, Defendant Goetting went to Plaintiff's cell and ordered him to cut his hair for the photo. Defendant Goetting threatened to have Pinckneyville's tactical team forcefully remove the dreadlocks, if Plaintiff refused to comply. Plaintiff told Defendant Goetting that forceful removal of his dreadlocks would violate his rights under the Free Exercise Clause of the First Amendment and under RLUIPA. Plaintiff showed Defendant Goetting a copy of the appellate court decision issued in his lawsuit.

---

[1] Before transferring, Plaintiff initially refused to shear his dreadlocks and was placed in segregation (Doc. 1-1, p. 5). After Plaintiff went on a hunger strike, Stateville officials agreed to transfer him without removing his dreadlocks. He neither names Stateville officials as defendants in this action, nor asserts any claims against them in the body of the complaint.

Defendant Goetting was aware of the pending lawsuit and indicated that he did not care about it (Doc. 1, pp. 3, 7; Doc. 1-1, p. 4). He explained that Plaintiff's dreadlocks pose a security risk because Plaintiff can hide objects in his hair. Plaintiff asked that his hair be searched but not cut (Doc. 1, p. 7; Doc. 1-1, p. 4). Defendant Goetting denied the request. He maintained that removal of the dreadlocks was required for Plaintiff's photo identification. Faced with the forceful removal of his dreadlocks, Plaintiff opted to cut his own hair. Despite doing so, he was never photographed.

Defendant Godinez issued a memo addressing the IDOC's hair policy. According to it, an offender's hair may be removed if there is a genuine need to search it for security reasons and the hair is unsearchable (Doc. 1, p. 8; Doc. 1-1, p. 4). Plaintiff maintains that his hair was searchable, and the removal of it for photo identification purposes did not constitute a "genuine" security need. The complaint challenges this policy as discriminatory. According to the complaint, inmates who are not of African descent wear dreadlocks, even in their photo identifications. The complaint also challenges as discriminatory a policy requiring the removal of dreadlocks prior to prison transfers because the policy has been used by the IDOC to single out African American inmates.

## Discussion

After carefully considering the allegations, the Court finds it convenient to separate them into four counts, including a First Amendment free exercise claim (**Count 1**), a Fourteenth Amendment equal protection claim (**Count 2**), a RLUIPA claim (**Count 3**), and a retaliation claim (**Count 4**).

With regard to the First Amendment free exercise claim (**Count 1**), it is well established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly

4

burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley,* 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). A prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner,* 482 U.S. at 90; *Al-Alamin,* 926 F.2d at 686.

Relative to the constitutional implications of the dreadlock policies, the Seventh Circuit has upheld the IDOC policy regarding dreadlocks under the factual scenario presented in *Grayson v. Schuler,* 666 F.3d 450, 452 (7th Cir. 2012) ("The case law indicates that a ban on long hair, including dreadlocks, even when motivated by sincere religious belief, would pass constitutional muster.") (citations omitted). *See Blakemore v. Godinez*, 2013 WL 6096548 (S.D. Ill. 2013). However, the appellate court also recognized that that ruling may conflict with *O'Lone v. Shabazz,* 482 U.S. 342, 348–50 (1987), requiring prison authorities to "accommodate" an inmate's religious preferences if consistent with security and other legitimate penological concerns. *Grayson,* 666 F.3d at 452–53. In *Lewis v. Stearnes,* 712 F.3d 1083, 1085 (7th Cir. 2013), the appellate court observed that *O'Lone v. Shabazz* still stands. Given these opinions, the Court cannot conclude at this early stage that the complaint fails to state a First Amendment claim. Accordingly, Plaintiff shall be allowed to proceed with Count 1 against Defendants.

With regard to a Fourteenth Amendment equal protection claim (**Count 2**), the Court analyzes similar claims under the most "explicit source[s] of constitutional protection." *Graham v. Connor,* 490 U.S. 386, 395 (1989). Accordingly, Fourteenth Amendment equal protection claims that are essentially duplicative of First Amendment free exercise claims are

5

routinely dismissed. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir.2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as a free exercise claim because the free exercise claim "gains nothing by attracting additional constitutional labels"). Because Counts 1 and 2 are duplicative, Count 2 shall be dismissed.

Turning to **Count 3**, the Court notes that RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It confers greater religious rights on prisoners than the Free Exercise Clause has been interpreted to confer. *See* 42 U.S.C. § 2000cc-1; *Cutter v. Wilkinson*, 544 U.S. 709, 714-17 (2005). RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless that burden: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)(1)–(2). However, "[u]nlike cases arising under the Free Exercise Clause of the First Amendment, this prohibition applies even where the burden on the prisoner 'results from a rule of general applicability.'" *Koger v. Bryan,* 523 F.3d 789, 796 (7th Cir. 2008) (quoting 42 U.S.C. § 2000cc–1 (a)).

Plaintiff sues Defendants Goetting and Godinez in their individual and official capacities for monetary damages and injunctive relief. Because sovereign immunity shields state officials from monetary damages in their official capacity, and RLUIPA does not allow for money damages against prison officials in their individual capacity, injunctive relief is the only possible remedy RLUIPA affords. *Grayson,* 666 F.3d at 451; *Nelson v. Miller,* 570 F.3d 868, 886–89 (7th Cir.2009). The proper parties in a claim for injunctive relief include the supervisory government officials who would be responsible for ensuring injunctive relief is carried out. *Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir.2011). Accordingly, Plaintiff shall be

allowed to proceed with Count 3 against Defendants, in their official capacities, but only as it pertains to his request for injunctive relief.

Finally, the complaint articulates a colorable retaliation claim (**Count 4**) against Defendant Goetting. According to the complaint, Defendant Goetting coerced Plaintiff into shearing his dreadlocks in retaliation for Plaintiff's decision to sue IDOC officials in *Grayson v. Schuler,* 666 F.3d 450, 452 (7th Cir. 2012). If Defendant Goetting issued this order in retaliation for Plaintiff's exercise of a constitutionally protected right, then the retaliation claim is actionable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")). This is a question that cannot be resolved at the pleadings stage of this case. Thus, the Court is unable to dismiss Plaintiff's retaliation claim. Accordingly, Plaintiff shall be allowed to proceed with Count 4 against Defendant Goetting.

## Pending Motions

1. **IFP Motion**

Plaintiff has filed a Motion for Leave to Proceed *In Forma Pauperis* ("IFP") in this case (Doc. 2), which shall be held in **ABEYANCE** at this time. Plaintiff has failed to provide the necessary prisoner trust fund account information that is required by the PLRA to determine whether the inmate is entitled to proceed without prepaying fees and costs. Pursuant to 28 U.S.C. Section 1915(b)(1), the Court must review the prisoner trust fund account statement for the 6-month period immediately preceding the filing of this action. This action was filed on December 3, 2013. Accordingly, Plaintiff must submit a certified prisoner trust fund account statement covering the period from June 1, 2013, until December 3, 2013. To date, Plaintiff has

filed a certified trust fund account statement covering a portion of this period, i.e., August 21st through November 14th, 2013. He is still awaiting receipt of a trust fund account statement from Cook County Jail.

**IT IS THEREFORE ORDERED** that Plaintiff shall provide the Clerk of Court with the attached certification completed by the Trust Fund Officer at each facility where he has been incarcerated and a copy of his/her trust fund account statement (or institutional equivalent) for the period covering June 1st – December 3rd, 2013, no later than January 27, 2014 (45 days from the date of this order). Failure to do so will result in dismissal of this action for failure to comply with an Order of this Court. Fed. R. Civ. P. 41(b). *See generally Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994).

**2.     Motion to Recruit Counsel**

Plaintiff has filed a motion for recruitment of counsel (Doc. 3), which shall be **REFERRED** to a United States Magistrate Judge.

**3.     Motion for Service of Process at Government Expense**

Plaintiff has also filed a motion for service of process at government expense (Doc. 4), which is **GRANTED**. Accordingly, service shall be ordered on Defendants **GOETTING** and **GODINEZ**.

**4.     Motion for Injunctive Relief**

Finally, Plaintiff has filed a motion for injunctive relief (Doc. 6), which shall be referred to a United States Magistrate Judge. To the extent that it seeks the issuance of a temporary restraining order and/or preliminary injunction, the motion is **DENIED** without prejudice. In the motion, Plaintiff seeks an immediate prison transfer because he fears retaliation for filing this lawsuit and does not feel safe at an institution with Defendants he has sued (Doc. 6,

p. 1). In considering whether to grant injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence. Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).

Without expressing any opinion on the ultimate merits of Plaintiff's claim for relief, the Court finds that a preliminary injunction and/or temporary restraining order should *not* be issued at this time. The allegations in Plaintiff's motion do not set forth specific facts demonstrating the likelihood of any immediate or irreparable harm (i.e., Plaintiff already cut his hair and has identified no other actual acts or threats of retaliation by Defendants), nor do they meet any of the other criteria outlined above. Further, allowing a prisoner who has sued prison officials to transfer to another institution merely because of the lawsuit would open a floodgate of litigation among prisoners hoping for prison transfers. Plaintiff's motion, to the extent it requests a preliminary injunction and/or temporary restraining order (Doc. 6), is **DENIED**.

### Disposition

**IT IS THEREFORE ORDERED** that the Motion for Injunctive Relief (Doc. 6), to the extent it seeks a temporary restraining order and/or preliminary injunction, is **DENIED** without prejudice.

**IT IS ALSO ORDERED** that **COUNT 2** is denied without prejudice.

**AS TO COUNTS 1, 3,** and **4**, the Clerk of Court shall prepare for **DEFENDANTS GOETTING** and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a decision on Plaintiff's motion to recruit counsel (Doc. 3) and motion for injunctive relief (Doc. 6). Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 11, 2013**

                                                    **s/ MICHAEL J. REAGAN**
                                                    **U.S. District Judge**